C-420

Dockets.Justia.com

KC F I L E D

MAR 9 0 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DAWN MAJERCZYK individually and on )
behalf of a class of similarly situated individuals, )
)
                    Plaintiff, )
)
v. )
)
MENU FOODS, Inc., a New Jersey Corporation, )
)
                    Defendant. )
--------------------------------------------------x

07CV1543
JUDGE ANDERSEN
MAGISTRATE JUDGE NOLAN

Jury Trial Demanded

### CLASS ACTION COMPLAINT

Plaintiff Dawn Majerczyk brings this class action complaint against defendant Menu Foods, Inc. ("Menu Foods") to seek redress for herself and all other individuals injured by its sale of contaminated pet food throughout the United States.

### NATURE OF THE CASE

1.     Menu Foods, one of the largest pet food manufacturers in the world, recently issued a mass recall of 42 brands of cat food and 51 brands of dog food.

2.     That recall was issued – belatedly – as a result of evidence that the pet food in question was contaminated with a potentially lethal agent.

3.     When ingested by an animal, the contaminated pet food can cause immediate renal failure, resulting in the complete shutdown of the animal's kidneys and, ultimately, its death.

4.     Menu Foods' actions in selling the contaminated food and failing to issue the recall sooner were reckless and in breach its duties and warranties to its customers.

C-421

5.    Those actions were a proximate cause of injury to and the deaths of currently untold numbers of pets, including plaintiff Dawn Majerczyk's cat, as described more fully below.

6.    On behalf of a nationwide class, Majerczyk seeks redress for that misconduct.

## PARTIES

7.    Plaintiff Dawn Majerczyk is a citizen of Illinois, residing in Cook County, Illinois.

8.    Defendant Menu Foods is the self-proclaimed "leading manufacturer of private-label wet pet food in North America." It is a New Jersey Corporation with its principle place of business in New Jersey. It does business throughout the United States, including Cook County, Illinois.

## JURISDICTION

9.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. § 1332(d) because (a) plaintiff and numerious members of her putative class are citizens of states different from those of which Menu Foods is a citizen, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the jurisdictional exceptions contained in 28 U.S.C. § 1332(d)(4)-(5) applies to the instant action.

## VENUE

10.    Venue is proper in this district under, *inter alia*, 28 U.S.C. §§ 1391(a)(1).

## FACTS

11.    Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

12.    It makes numerous express warranties about the quality of its food and its manufacturing facilities.

2

C-422

13.    For example, Menu Foods touts the claim that it "manufacture[s] the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

14.    Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

15.    On or about March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facility in Emporia, Kansas, between Dec. 3, 2006, and March 6, 2007.

16.    Weeks before the recall, Menu Foods had received numerous complaints indicating that the pet food originating from the Emporia plant was killing pets.

17.    As a result of these complaint, Menu Foods tested its food on approximately 40 to 50 pets. Seven of those pets died after ingesting the food.

18.    Despite having actual knowledge of both the complaints it received and its own study, Menu Foods delayed for weeks before issuing the notice of recall.

19.    Even then, its recall was conducted in a negligent manner. For example, both its website and the toll-free telephone number it provided to the public were frequently non-operational.

## FACTS RELATING TO THE NAMED PLAINTIFF

20.    On or about March 10, 2007, Majerczyk purchased several pouches of Special Kitty Select Cuts from a Walmart store for her nine-year-old cat, Phoenix.

21.    Menu Foods is the manufacturer of Special Kitty Select Cuts.

3

C-423

22.    On March 16, 2006, shortly after ingesting Menu Food's cat food, Phoenix went into renal failure. Phoenix's kidneys shut down, and on March 17, 2007, he had to be put down.

23.    Majerczyk incurred over $300 in veterinary expenses relating to the attempts to save Phoenix's life.

24.    Phoenix had been with Majerczyk's family from birth.

25.    The loss was devasting not only to Majerczyk, but also to her seventeen-year-old son and fourteen-year-old daughter as well.

## CLASS ALLEGATIONS.

26.    Majerczyk brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

27.    Upon information and belief, there are over 100,000 members of the Class such that joinder of all members is impracticable.

28.    Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members. Common questions for the Class include:

(a)    Did Menu Foods act negligently in failing to prevent the contamination of its pet food?

(b)    Did Menu Foods act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

4

C-424

    (c)  Did Menu Foods' breach express and/or implied warranties relating to the sale of its pet food?

  29.  Majerczyk will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

  30.  A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class is impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

**COUNT I**

**(Breach of Warranties)**

  31.  Plaintiff incorporates by reference the foregoing allegations.

  32.  Menu Foods breached express warranties to Plaintiff and violated the Uniform Commercial Code.

  33.  Menu Foods breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

  34.  Menu Foods breached the implied warranty of merchantability.

  35.  As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

5

C-425

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.   An order certifying the Class as defined above;

2.   An award of actual damages;

3.   Appropriate injunctive relief;

4.   Medical monitoring damages;

5.   Reasonable attorney's fees and costs; and

6.   Such further and other relief the Court deems appropriate.

### COUNT II
### (Negligence)

36.   Plaintiff incorporates by reference the foregoing allegations.

37.   Menu Foods owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

38.   Menu Foods breached this duty by failing to exercise due care in the producing, processing, manufacturing and offering for sale of the contaminated pet food described herein.

39.   Menu Foods further breached this duty by failing timely and effectively to warn plaintiff and the class of the contamination even after it had actual knowledge of that fact and of the resulting risks.

40.   As a proximate cause thereof, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

6

C-426

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.  An order certifying the Class as defined above;

2.  An award of actual damages;

3.  Appropriate injunctive relief;

4.  Medical monitoring damages;

5.  Reasonable attorney's fees and costs; and

6.  Such further and other relief the Court deems appropriate.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

March 20, 2007                      Dawn Majerczyk, individually and on behalf of a
                                    class of similarly situated individuals


_____
                                    one of her attorneys

John Blim
Jay Edelson
Myles McGuire (Of Counsel)
Blim & Edelson, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
(312) 913-9400
(312) 913-9401 (Fax)

7

C-422

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

LIZAJEAN HOLT,                                    )
                                                  )
Individually, and on behalf of similarly         )
situated persons,                                 )
                                                  )     No. _____
          Plaintiff,                              )
                                                  )
v.                                                )     Class action
                                                  )
MENU FOODS, INC.,                                 )     JURY DEMAND
                                                  )     CLASS ACTION
          Defendant.                              )

## CLASS ACTION COMPLAINT

### I. Class Action

1. Plaintiff, individually and as representative of a Class of similarly situated persons more defined below, brings suit against the named Defendant for offering for sale and **selling** to Plaintiff and Class members pet food and food products – "cut and gravy" pet products – formally **recalled** on March 16, 2007. Defendant is a corporation doing business and operating in the United States. Defendant recalled cat and dog food products that are sold under numerous brands by several national chain stores in Tennessee and other States in the United States. The pet food products were produced by Defendant(s), a private label manufacturer, labeled by the Defendant, and then distributed and ultimately sold to Plaintiff, Class Members, and others. Defendant issued or caused to be issued a press release announcing the recall, and the United States Food and Drug Administration issued a press release the same day. These pet food products were intended to be placed in the stream of commerce and distributed and offered for sale

C-428

and sold to Plaintiff and purchasers in Tennessee and the United States and fed to their pets, cats and dogs.

## II. Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and subsection (d), and the Class Action Fairness Act of 2005, Pub. L.109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391 and/or Pub. L.109-2 because a part or substantial part of the events or omissions giving rise to the claim occurred in this judicial district, or a substantial part of property that is the subject of the action is situated in this judicial district.

4. In this judicial district, Plaintiff purchased the recalled pet food product made by or for Defendant, and her pet ate or consumed it. Thousands of other consumers/customers – including Plaintiff and other Class Members – purchased the recalled or contaminated products in this judicial district from retailers that Defendant, its agents, affiliates, or others it or they controlled sold or made available to them. In turn, retailers or others sold these recalled products to the general public, including Plaintiff, Class members and other purchasers. These products were purchased for consumption by the pets of Plaintiff and the Class members. Defendant made or caused these products to be offered for sale and sold to the public, including Plaintiff.

5. Rule 23 of the Federal Rules of Civil Procedure applies to class actions as well.

## III. Plaintiff

C-429

6. At all times material hereto, Plaintiff Lizajean Holt was and is a citizen of the State of Tennessee and the United States and resides in Knox County, Tennessee.

**IV. Plaintiff's Purchase(s)/Defendant's Recall**

7. Plaintiff purchased recalled brands of Pet Pride and Iams pet food from a national chain grocery store, Kroger, operating in Knox County, Tennessee. Kroger, like other retailers, did not alter the product produced by the Defendant in any way prior to selling it to Tennessee consumers and other consumers throughout the United States.

8. Without knowing that Defendants would recall the product after it was offered for sale and sold to her, Plaintiff purchased and fed the product(s) to her cat, her pet. Her pet became lethargic and began drinking large amounts of water and Plaintiff discontinued feeding the Defendant's products to her cat prior to the recall notice. Plaintiff and thousands of other consumers will now face veterinary bills to have their pets evaluated for kidney damage.

9. Before her purchase, Defendant never warned Plaintiff that the pet food product that she purchased for feeding her pet may or would cause it have health problems or concerns or that she would have to take her pet to a veterinarian due to a health concern relating to or resulting from the tainted pet food.

10. On or on about March 16, 2007, Defendant issued a recall for certain pet food for cats and dogs that it manufactured in plants that it controlled, owned, operated, or managed in the United States.

11. Defendant's business consists substantially of providing private label pet foods at its plants or pet foods under other brands, not its own. In turn, Defendant's

3

C - 430

products are sold under a variety of labels or brands listed on its website as of March 17, 2007 and set forth below.

12. The product that Plaintiff purchased at a Kroger in Knoxville was a product recalled by Defendant.

13. After Plaintiff purchased the pet food and fed it to her cat, she learned about the recall and the actual or potential problems and concerns from purchasing and feeding the product to her pet.

14. Plaintiff bought the product(s) for their intended purposes: to feed her pet.

15. Defendant placed these pet products in the stream of commerce in Tennessee and elsewhere expecting that consumers such as Plaintiffs, the Class members, and the general public would feed these products to their pets.

**V. Defendant, Its Business, and the Recall**

16. At all times material hereto, Defendant Menu Foods, Inc. was and is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110. Defendant is ultimately owned or controlled by Menu Foods Income Group, an Ontario based legal entity. Some of Defendant's high managerial or officers or agents with substantial authority are also high managerial officers or agents of Menu Foods Income Group. Defendant may be served through the Secretary of State for Tennessee or as provided by law.

17. Defendant Menu Foods, Inc. owns, controls, is related to or an affiliate of a firm with plants where the pet food is manufactured or processed that are located in the United States. These plants are located in Emporia, Kansas and, Pennsauken, New

4

C - 431

Jersey, the place of manufacture where the pet products were recalled, and/or at other locations in the United States.

18. Defendant is the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger, PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food products to or for Proctor & Gamble, Inc. It produces hundreds of millions of containers of pet food annually.

19. Defendant has manufactured or produced pet food for private labels for about 17 of the 20 leading retailers in the United States.

20. Defendant's business includes manufacturing, producing, distributing, or selling cat food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Wynn Dixie.

21. Defendant's business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion,

5

C-432

Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura

Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max,

Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride – Good & Meaty,

President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot,

Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Wynn

Dixie, and Your Pet.

22. On Defendant's website as of March 17, 2007, it listed by brands, the size of

the container or pouch, the dates of manufacture, and the products subject to recall.

Thus, each container or pouch and size of each brand or label listed – subject to the recall

above – was noted specifically on its web site. Thus, a 3 ounce can or pouch of Pet Pride

Pouch Mixed Grill 24 X 3 with sale by date of March 8, 2009, with a specified "UPC"

number was one of about 150 separate Pet Pride labeled cat food that Defendant recalled.

The other brands also generally listed numerous separate pouches or containers bearing

the major private label or brand with a further sub-description similar to the manner

described above, by brand or label.

23. After reports or complaints from pet owners about symptoms – such as

vomiting or lethargy – suggesting kidney failure in their dogs and cats and/or after reports

of deaths of certain pets, from or through its Canadian office or affiliation, Defendant

caused or issued a recall of certain specified pet products, reportedly totaling between 40

and 60 million cans.

24. Defendant also advised a governmental agency of the United States about the

recall and certain events leading to the recall, namely the Food and Drug Administration

(FDA).

6

C-433

25. Defendant produces over 1,000,000,000 pouches or containers of pet food products each year, a substantial portion of which is sold or offered for sale in Tennessee or for Tennesseans who purchase the products for their pets. Many consumers who fear for the health of their pets will no longer have the product because it has been fed to the pets.

26. Defendant knows or should know that national, regional, and/or local distributors will distribute these finished pet food products that it manufactures or processes to retailers to offer them for sale in Tennessee to Tennesseans who purchase and buy them for their pets for consumption by their pets in the State of Tennessee and in this judicial district.

27. Defendant knows or understands that millions or tens of millions of cans or pouches of the pet food products that it manufactures or produces will be advertised, promoted, and sold in Tennessee and this judicial district, including a significant or substantial part of the recalled pet food.

28. Defendant knows or understands that the promotion and advertising of pet food produced at its plants in part targets consumers and customers in Knox County, in this judicial district, in the State of Tennessee, regionally, or nationally.

29. Defendant makes or produces the pet food products in its plants with a purpose or design that consumers and customers will purchase them, regardless of brand or label name, place of purchase, or place where pets actually consume them.

30. Defendant makes or produces for third parties well-known, lesser known, and/or premium or discount brands or labels of pet foods and knows that customers and consumers will ultimately purchase them to feed to their pets.

7

C-434

31. Defendant desires that consumers and others who purchase or consider purchasing a pet food product made or produced in one of its plants, by whatever label or brand, believe that the pet food product is safe for their pets to eat.

32. In the last few days, Defendant has recalled specified pet food products that consumers and customers purchased from a time beginning about December 3, 2006 and concluding about March 6, 2007.

33. Class members and others have purchased the pet products that were recalled across the United States, in Tennessee, and in this judicial district.

34. Class members and others who purchased or fed Defendant's products to their pets did so in this judicial district, in Tennessee, and in the United States.

35. Some class members or others have already taken their pets to a veterinarian for treatment or diagnosis related to their pets eating the recalled pet food and more will do so as word of the recall spreads. For instance, the Knoxville NewsSentinel carried a prominent story about the recall and the potential dangers to the pets of East Tennessee citizens in its Sunday, March 18, 2007 edition.

36. Class members have suffered and will suffer injuries, losses, or damage as a result of the recall and/or feeding their animals the food that was recalled.

37. There have been other reported incidents of pet food being recalled as a result of possible or actual concerns or problems with the pet food and its or their effects on pets. Defendant knew or should have known about the risks and possible injury.

**VI. Plaintiff, Class Members, and Others' Losses, Damages, and Injuries**

38. As a result of their purchases of the pet food recalled or subject to recall, set forth above, Plaintiff, Class members, and others have suffered and will suffer a loss,

8

C-435

damage, injury, and sustained damages, including consequential and incidental damages, such as costs of purchasing the contaminated food product and replacing it with a safe food product, including sale tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendant, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

## VII. Breach of Warranties & Remedies

39. Defendant breached express warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

38. Defendant breached implied warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

40. Defendant breached the implied warranty of fitness for a particular purpose by claiming certain of the pet food that it manufactured or produced and was recalled were fit and safe for consumption by pets and thereby violated the Uniform Commercial Code.

41. Defendant breached the implied warranty of merchantability. In fact, the pet food subject to recall and purchased or used by Plaintiff, the Class, and others was not merchantable. This breach violated the Uniform Commercial Code.

42. Plaintiffs are entitled to the remedies for breach authorized by the Uniform Commercial Code and other law.

## VIII. Negligence

9

C-436

43. Defendants owed Plaintiff and the Class a duty to only offer safe, non-contaminated products for consumption by pets and offered for sale and sold in the stream of commerce.

44. Though its failure to exercise due care Defendant owed Plaintiff, the class, and others, Defendant was negligent in producing, processing, manufacturing, and offering for sale the recalled pet food and pet food products it offered for sale and sold to Plaintiff, the class, and others.

45. Defendant failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production, or processing, or failed to take sufficient measures to prevent the pet food products that were recalled from being offered for sale, sold, or fed to pets.

46. Defendant knew or should have known that the pet food that was recalled presented an unacceptable risk to the pets of the Plaintiff, the Class, and others and would result in damage that was foreseeable and reasonably avoidable.

47. The loss, damage, and injuries were foreseeable.

48. Defendant's negligence proximately caused the loss, damage, injury, and damages to Plaintiff, the Class, and others.

## IX. Statutory Unfair or Deceptive Trade Practices Act

49. Plaintiff, the Class, purchasers, others, and Defendant are each a "person" within the meaning of Tenn. Code Ann. §47-18-103.

50. Defendant's offer for sale or sale of their recalled pet food products is in or affects trade or commerce in Tennessee.

C-432

51. Defendant impliedly represented to the public, Plaintiff, the Class and others that its pet food products were safe for consumption by their pets and could be safely purchased.

52. In fact, Defendant recalled or caused to be recalled millions of containers or pouches of pet food because it risked the health and well-being of consumers, customers, Plaintiff, purchasers, the Class, and others.

53. Defendant violated Tenn. Code Ann. §47-18-104 (a) and sub-parts of (b) by placing these unsafe pet food products in the stream of commerce in Tennessee.

54. Each Plaintiff, Class member, and other person adversely affected in Tennessee has suffered an ascertainable loss of money or property due to a violation of the Consumer Protection Act.

55. Plaintiffs brings a claim for a violation of the Tennessee Consumer Protection Act under Tenn. Code Ann. §47-18-109, including the ascertainable loss of money or property by each such person.

## X. Rule 23

56. Plaintiffs ask this Court to certify the following Class:

All persons in the United States who purchased or fed his, her, or their cat(s) or dog(s) pet food produced or manufactured by Defendant that was or will be recalled by the Defendant, including that produced from December 3, 2006 up to and including March 6, 2007.

57. Plaintiff is a member of the Class, sues as a representative party on behalf of all, and avers that the class is so numerous that joinder of all members is impracticable.

58. There are questions of law or fact common to the Class. These common questions include but are not limited to the following:

11

C-438

a. Whether Defendant sold pet food products that were recalled or subject to a recall?

b. Whether Defendant advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members?

c. Whether Defendant expressly warranted these products?

d. Whether Defendant impliedly warranted these products for fitness for a particular purpose?

e. Whether Defendant impliedly warranted these products for merchantability?

f. Whether Defendant purported to disclaim any express warranty?

g. Whether Defendant purported to disclaim any implied warranty?

h. Whether any limitation on warranty fails to meet its essential purpose?

i. Whether Defendant intended that the pet food products be purchased by Plaintiff, Class members, or others?

j. Whether Defendant intended or foresaw that Plaintiff, class members, or others would feed their pet food products to their pets?

k. Whether Defendant recalled the pet food products?

l. Whether Defendant was negligent in manufacturing or processing the pet food products?

m Whether using the products as intended – to feed their pets – resulted in loss, injury, damage, or damages to the Class?

n. Whether Defendant's negligence proximately caused loss or injury to damages?

o. Whether Class members suffered direct losses or damages?

p. Whether Class members suffered indirect losses or damages?

12

C-439

q. Whether Defendants' acts or practices violated state Deceptive Trade Practices Acts?

59. The claims or defenses of the representative parties are typical of the claims or defenses of the Class.

60. The representative parties will fairly and adequately protect the interests of the Class.

61. Prosecuting separate actions by individual members of the Class would create a risk of either –

a. Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants, the parties who oppose the class, or

b. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

c. Few, if any, Class members have an interest in individually controlling the prosecution of separate actions;

d. Plaintiff is unaware of any litigation concerning the controversy already commenced by members of the class;

e. It is desirable to concentrate the litigation of the claims in this forum;

f. No unusual difficulties are likely to be encountered in the management of a class action.

13

C-440

62. The undersigned Attorneys for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis.

63. They will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

64. Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

**XII. Jury Demand**

65. The Class demands a jury trial on all issues triable by a jury.

**XIII. Prayer for Relief**

Wherefore, premises considered, Plaintiff prays that the Court grant the following relief:

1. That process issue and Defendant be served. (Plaintiff's counsel will first provide Defendant's agent, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, NJ 08628 with a Notice of Lawsuit by mail pursuant to the Federal Rules)

2. That as soon as practical, the Court certify a Class, defined herein, or modified as appropriate under the facts and law.

3. That the Court find that Plaintiff has satisfied Rule 23's and federal law's requirements for certifying a Class.

14

C-441

4. That the Court find that Defendant manufactured or processed the pet food products that were sold or offered to sale to Plaintiff and the Class.

5. That the Court find that Defendant intended Plaintiff and Class members to believe that the pet foods sold were fit and safe for consumption by their pets.

6. That a trial be held and Defendants be held liable to the Class for – breach of warranty, negligence, and under state statutes prohibiting deceptive trade practices.

7. That the Class be awarded an amount sufficient for direct damages occasioned by Defendants' acts and practices.

8. That the Class be awarded an amount sufficient for indirect, consequential, and incidental damages occasioned by Defendant's acts and practices.

9. That the Class be awarded treble damages or special damages authorized by state statutes prohibiting deceptive trade practices, depending upon the State where the Class Member lives.

10. That the Court award reasonable attorney's fees and costs and expenses recoverable under law.

11. That the Court order such other, further relief as the case requires and justice demands.

Dated:  March 19, 2007.

Respectfully submitted,

/s/ A. James Andrews
A. James Andrews, BPR # 15772
905 Locust Street
Knoxville, Tennessee 37902
(865) 660-3993
Fax: (865) 523-4623

C-442

/s/Perry A. Craft
Perry A. Craft, BPR # 6057
Craft & Sheppard, PLC
The Shiloh Building
214 Centerview Drive
Suite 233
Brentwood, Tennessee 37027
(615) 309-1707
(615) 309-1717 (fax)


/s/Nichole Bass
Nicole Bass, BPR # 021383
905 Locust Street
Knoxville, Tennessee 37902
(865) 310-6804


Cost Bond

We are sureties for costs not to exceed $1,000.


/s/ A. James Andrews


16

C-443